TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0503-KB

LISA M. WELLS                                              MOVANT

V.                             IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                RESPONDENT

## OPINION AND ORDER

Movant, Lisa M. Wells, KBA Member No. 90086, was admitted to practice law in this Commonwealth on April 23, 2004. Her bar roster address is 9274 Dundee Drive, West Chester, Ohio 45069. Wells moves this Court to enter a negotiated sanction pursuant to Supreme Court Rule (SCR) 3.480(2) to resolve the pending disciplinary proceedings against her. The Kentucky Bar Association (KBA) has no objection. Finding the proposed sanction to be adequate, we grant Wells's motion.

## BACKGROUND

The motion for negotiated sanctions involves three KBA disciplinary files: 16-DIS-24285, 19-DIS-0224, and 19-DIS-0229. We note that, prior to these disciplinary files, Wells was suspended for noncompliance with Continuing

Legal Education requirements on January 17, 2020. We discuss each of the disciplinary files in turn.

## KBA File 16-DIS-24285

Pursuant to SCR 3.166(1), an attorney who pleads guilty to or is convicted of a felony "shall be automatically suspended from the practice of law in this Commonwealth." In March 2020, this Court temporarily suspended Wells for misconduct as charged in KBA File 16-DIS-24285. *Kentucky Bar Ass'n v. Wells,* 599 S.W.3d 435 (Ky. 2020). That misconduct was described by the Court as follows:

> In 2016, Wells received a ticket in Ohio for operating a motor vehicle while impaired. Wells was in possession of drugs during the traffic stop and received both felony and misdemeanor drug charges. Wells entered a guilty plea to the charges in 2017 and the court found that Wells was a "drug dependent person," that "her drug dependence was a factor leading to the criminal activity," and that "rehabilitation through intervention would substantially reduce the likelihood of additional criminal activity." Therefore, it granted her Intervention in Lieu of Conviction (ILC).
> Under the terms of her ILC, Wells was to undergo a two-year period of rehabilitation. The case remained open for two years to ensure her compliance with the terms of the ILC and other conditions. Had Wells completed the ordered rehabilitation program and complied with the remaining conditions, the case would have been dismissed. However, Wells did not successfully complete the program.
> The Ohio court that imposed the ILC ordered Wells to show cause in 2019, stating she had failed to provide reports of her compliance with the Ohio Lawyer Assistance Program (OLAP) as required in her ILC and had failed to respond to attempts to contact her. Wells failed to appear at two different Notice of Community Control Violation hearings, leading to the issuance of a warrant.
> Wells appeared in court in November 2019 for an evidentiary hearing based on three alleged ILC violations. At the hearing, the court revoked her ILC and found her guilty of four counts of aggravated possession of drugs, a fifth-degree felony in Ohio. The

2

court sentenced Wells to three years of community control[1] and determined that if she violates the community control sanctions, she would be sentenced "for a period of twelve (12) months on each count."

*Id.* at 436.

As outlined in Wells's motion, the Ohio court also ordered that Wells complete 60 hours of community service, obtain full-time employment, complete an outpatient program for drugs/alcohol for one year, attend Alcoholics Anonymous and Narcotics Anonymous meetings three times a week, report to Miami County Adult Parole Authority weekly, perform random drug screens, and enroll in and attend individual therapy once a week.

The Office of Bar Counsel attempted to monitor Wells's compliance with her ILC and OLAP agreements, but Wells failed to respond to requests for information. On February 24, 2020, Wells successfully completed an alcohol and drug treatment program. Upon discharge, the providers recommended that Wells complete a year-long continuing care program, which she also completed. Wells continued to report weekly to Miami County Adult Parole Authority and on June 18, 2021, her probation officer recommended terminating community control. That same day the Ohio court terminated community control, five months earlier than originally ordered.

In addition to satisfying the treatment requirements, Wells successfully completed a five-year contract with OLAP. In August 2021, Wells signed a second contract with OLAP which required her to call a drug screening line

---

[1] At the time Wells was sentenced by the Ohio court, community control was akin to probation. *See* Ohio Rev. Code § 2929.15, § 2929.25.

3

daily and report for urine screens upon request. Wells asserts that as of November 21, 2022, she remains fully compliant with that OLAP contract and that she has not had any other criminal issues since her release from community control.

On May 24, 2022, the Ohio Supreme Court suspended Wells from the practice of law for two years, with credit for time served under her previous December 10, 2019 interim felony suspension.[2] The court further ordered that, as a condition of reinstatement, Wells provide proof of compliance with or completion of the five-year OLAP contract entered in August 2021. Wells acknowledges that previously she did not consistently respond to efforts by the Office of Bar Counsel to monitor her compliance with her supervision agreement, in violation of SCR 3.130(8.1)(b), but that she has made consistent efforts to comply with her OLAP agreement.

### KBA File 19-DIS-0224

In December 2017, Tressa Downs hired Wells to represent her son, Beau, in a Boone Circuit Court criminal case. Downs paid Wells $12,500, and later paid another $12,500 because the case was ultimately federally prosecuted. Wells acknowledged that she did not deposit the additional $12,500 into a trust account in violation of SCR 3.130(1.15)(a). In January 2018, Beau was charged with wanton endangerment, possession of marijuana, and several

---

[2] Under the Supreme Court Rules for the Government of the Bar of Ohio, Section 18(A)(1)(a), an attorney is subject to an interim suspension when convicted of a felony.

traffic-related offenses. Downs also hired Wells for the 2018 case and paid Wells an additional $7,000. Wells admits she did not place the $7,000 into a trust account.

Wells eventually withdrew as counsel in the federal case but continued to represent Downs in the state case. The court held a pretrial conference on September 4, 2019 and Wells failed to appear. Another attorney that Wells worked with at the time appeared on her behalf and informed the court she would not be present. Wells did not inform her client that she would not be at the pretrial conference and failed to return her client's calls. Wells did not complete representation on the state case and Downs eventually retained new counsel.

In her response to the KBA Complaint, Wells states that the preparation of Beau's defense began immediately, despite the Boone County case proceeding slowly given the anticipation of federal charges. Beau was also facing criminal charges in Illinois. Wells outlines the work she performed in Beau's cases. Wells asserts that there is dispute as to whether she earned the total fee paid and agrees to submit this matter to fee arbitration at the conclusion of this disciplinary matter.

### KBA File 19-DIS-0229

Jason Kuhn retained Wells to assist him in the fall of 2017 in a juvenile court matter. Kuhn also retained Wells to represent him in a criminal investigation that originated from the same course of conduct. The Boone County Commonwealth's Attorney ultimately decided not to prosecute Kuhn.

5

In April 2019, Kuhn faced criminal charges, retained Wells, and paid her $50,000 due to the serious nature of the charges and the time Wells anticipated the case would require. In August and September 2019, Wells failed to appear at hearings and failed to respond to requests for information. In his bar complaint, Kuhn asserts that Wells failed to communicate or respond to requests. Once Kuhn learned of Wells's personal and legal issues, he realized she would be unable to fulfill her obligations to him and unsuccessfully attempted to contact Wells on numerous occasions. Kuhn's mother and power of attorney sent a letter to Wells requesting her withdrawal from the case and a refund of the fee paid. Kuhn also submitted a claim to the Clients' Security Fund.

In her response to the KBA Complaint, Wells asserts that she spent hundreds of hours working on the case and acknowledges that she should have formally withdrawn as Kuhn's counsel. She states that, ultimately, Kuhn pled to the deal she negotiated for him. Kuhn asserts that Wells deposited his fee payment checks into her personal account. Wells acknowledges that the funds were not deposited into a trust account but states that, at the time the checks were deposited, she had already earned the fees paid. She deposited the checks on June 7, 2019 ($10,000) and July 3, 2019 ($5,000 and $30,000).

Wells notes that Kuhn requested a refund of the fee paid and that she has not provided a refund, nor did she provide a statement showing that the fee had been earned. Wells agrees to submit this matter to fee arbitration at

the conclusion of this disciplinary matter to discern what portion of the fee was earned and whether a refund is necessary.

## PROPOSED NEGOTIATED SANCTION

Based on the admissions made and in light of Wells's ongoing efforts to maintain a commitment to her sobriety, Wells asks this Court to impose a probated two-year suspension with the following conditions:

1. Submission of binding fee arbitration petitions pursuant to SCR 3.810 in both disciplinary matters within 30 days of entry of this Court's Order;

2. Continued participation in the OLAP program and compliance with her existing supervision agreement, with Movant providing the Kentucky Office of Bar Counsel quarterly reports demonstrating her ongoing compliance;

3. Participation in, and successful completion of, the Ethics and Professionalism Enhancement Program and the Trust Account Management Program; and

4. No additional criminal or disciplinary charges.

The KBA has no objection to the proposed discipline.

## ANALYSIS

The negotiated sanction rule provides that "[t]he Court may consider negotiated sanctions of disciplinary investigations, complaints or charges" if the parties agree. SCR 3.480(2). Upon receiving a motion under this Rule, "[t]he Court may approve the sanction agreed to by the parties, or may remand

the case for hearing or other proceedings specified in the order of remand." *Id.* Thus, acceptance of the proposed negotiated sanction falls within the discretion of this Court.

To support its position, the KBA cites three cases. In *Kentucky Bar Association v. Mulliken,* 353 S.W.3d 614, 615 (Ky. 2011), following Mulliken's felony convictions for promoting contraband in the first degree and conspiracy to trafficking in a controlled substance, Mulliken was sentenced to five years on each count, to run consecutively. He was temporarily suspended from the practice of law on June 23, 2004. *Id.* Mulliken acknowledged his conduct constituted violations of the relevant rules but noted the substance abuse and addiction issues he experienced at the time of his misconduct. *Id.* The Court suspended Mulliken until he was released from probation and parole, and then for another five years thereafter. *Id.* The Court ordered that once Mulliken completed requirements suggested by an appropriate substance abuse professional and followed his Kentucky Lawyer Assistance Program (KYLAP) contract, the remaining period of his suspension would be probated so long as Mulliken remained illegal drug and alcohol free. *Id.* at 616.

In *Wickersham v. Kentucky Bar Association,* 585 S.W.3d 766 (Ky. 2019), Wickersham, while intoxicated, picked up his minor son from school and fell asleep while driving his son on a local interstate. The son contacted his mother, who then contacted law enforcement. *Id.* The criminal case, in which Wickersham was charged with first-degree wanton endangerment, alcohol intoxication, and DUI, was resolved by a plea agreement on March 8, 2018 and

8

provided for pretrial diversion for three years. *Id.* at 767. Wickersham was temporarily suspended from the practice of law upon entering the guilty plea. *Id.* After the incident, Wickersham entered an in-patient treatment program and made plans to enter a KYLAP agreement thereafter. *Id* at 767-68. He also acknowledged his conduct violated the rules. *Id* at 767. The Court accepted Wickersham's proposed negotiated sanction and imposed a three-year suspension, retroactive from March 8, 2018 (the date Wickersham entered the plea agreement), or until Wickersham satisfied the conditions of his pretrial diversion in the criminal proceedings, whichever occurred first. *Id.* at 768.

In *Fink v. Kentucky Bar Association,* 568 S.W.3d 354, 355 (Ky. 2019), Fink was charged in Indiana with dealing methamphetamine, maintaining a common nuisance, and five other drug-related possession charges. She was sentenced to eight years in prison on August 20, 2015 and, as a result, this Court temporarily suspended her from the practice of law. *Id.* at 355-56. In December 2016 the court modified Fink's sentence so she could serve the remaining sentence on home detention. *Id.* at 355. While awaiting trial, Fink was indicted for drug-related offenses, ultimately entered a guilty plea, and was sentenced to one and one-half years in prison, which was later modified to nine months of home incarceration set to conclude November 2018. *Id.* at 356.

Based on the two instances of misconduct, this Court ultimately ordered a five-year suspension, retroactive from August 20, 2015, or until she satisfied the conditions of the criminal proceedings. *Id.* The Court also ordered Fink to continue participation in KYLAP and stated that if Fink violated the terms of

9

her criminal probation, the Office of Bar Counsel could seek to revoke the suspension and seek permanent disbarment. *Id.* at 357. In March 2020, Fink completed her sentence and satisfied all conditions of her criminal proceedings. *Fink v. Kentucky Bar Association,* 636 S.W.3d 545, 547 (Ky. 2021, *modified on denial of reh'g,* Dec. 6, 2021).

Like *Mulliken, Wickersham,* and *Fink,* Wells acknowledged her violating of the rules and similarly suffered from drug-related issues which resulted in criminal prosecution. Additionally, like *Mulliken, Wickersham* and *Fink,* Wells was automatically suspended from the practice of law pursuant to SCR 3.166(1) and has remained suspended since March 26, 2020. Wells also has displayed a commitment to her sobriety by completing an outpatient treatment program, completing an OLAP contract, and entering another OLAP contract.

We find a two-year probated sentence appropriate. In the above-referenced cases, each suspension was either probated or applied retroactively, effectively resulting in suspension periods of one and one-half years for Wickersham, four and one-half years for Fink, and a probated five-year suspension for Mulliken upon completion of certain KYLAP requirements. Wells has been suspended from the practice of law in Kentucky for nearly three years. Further, the Ohio court never ordered Wells to serve jail time, and instead granted Intervention in Lieu of Conviction and Community Control. A probated two-year suspension with numerous conditions, including that Wells take affirmative action in rectifying the financial disputes with Downs and

10

Kuhn, is appropriate when paired with what has effectively been a three-year suspension.

Wells also requests that this Court order binding legal fee arbitration pursuant to SCR 3.810 in both the Downs and Kuhn matters. That rule establishes "a procedure whereby fee disputes arising from attorney and client relationships may be resolved by submission to binding arbitration." SCR 3.810(1). Legal fee arbitration is available when the amount in controversy exceeds the jurisdictional maximum pursuant to Kentucky Revised Statute (KRS) 24A.230, "and all parties to the dispute agree in writing to submit the dispute to these Rules and further agree in writing that they shall be fully bound by the decision and Award of the Panel." SCR 3.810(3)(A) (emphasis added). Proceedings under this rule are initiated by filing a petition with the KBA. SCR 3.810(4)(A). When the Court refers a disciplinary matter to legal fee arbitration, the Director of the KBA must accept jurisdiction. SCR 3.810(4)(F). The Director must forward a copy of the petition for legal fee arbitration and the arbitration agreement signed by the petitioner (Wells) to the other parties to the disputes to sign and return to the Director with the answer to the petition. SCR 3.810(4)(D). We interpret this rule to mean that, while we can, and ultimately do, order Wells to petition for arbitration, the clients she wronged can choose whether to agree to submit the dispute to binding legal fee arbitration. SCR 3.810(4)(E).

After reviewing the allegations, Wells's previous disciplinary record, her willingness to cooperate with her OLAP agreement and transmit relevant

11

information to the Office of Bar Counsel, her demonstrated dedication to continuing her sobriety, and the cases cited by the KBA, this Court concludes that the discipline proposed by Wells, and agreed to by the KBA, is appropriate.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. Wells is suspended for two years from the date of this Order, with the suspension probated for a period of two years on the following terms and conditions:

   a. Wells shall petition the Kentucky Bar Association for legal fee arbitration in both the Downs and the Kuhn matters in accordance with SCR 3.810 within 30 days of the date of entry of this Opinion and Order or show cause why such proceedings are not applicable. Pursuant to SCR 3.810(3)(A), the amount in controversy must exceed "the jurisdictional maximum specified in KRS 24A.230 and all parties to the dispute agree in writing to submit the dispute to these Rules and further agree in writing that they shall be fully bound by the decision and Award of the Panel." If either or both clients decline to participate in legal fee arbitration, Wells must immediately notify the KBA. For any client that declines, the KBA shall proceed through the disciplinary process as it deems appropriate regarding that client's underlying matter.

   b. Wells shall attend, at her expense, the next scheduled Ethics and Professionalism Enhancement Program offered by the Office

12

of Bar Counsel, separate and apart from her fulfillment of any other continuing legal education requirement, within twelve months after entry of this Court's order. Wells must pass the test given at the end of the program.

c. Wells shall attend, at her expense, the next scheduled Trust Account Management Program offered by the Office of Bar Counsel, separate and apart from her fulfillment of any other continuing education requirement, within twelve months after entry of this Order.

d. Wells must continue participation in the OLAP program and comply with her existing supervision agreement. Wells must provide the Kentucky Office of Bar Counsel quarterly reports demonstrating her ongoing compliance.

e. Wells must not receive any additional criminal or disciplinary charges.

2. If Wells violates the terms of probation within two years from the date of this Order, the Kentucky Bar Association may file a motion with the Supreme Court requesting the issuance of a show cause order directing Wells to show cause, if any, why the two-year suspension should not be imposed.

3.  In accordance with SCR 3.450, Wells is directed to pay all costs associated with these disciplinary proceedings against her, said sum being $115.35, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting.  All concur.

ENTERED: February 16, 2023.

_____
CHIEF JUSTICE VANMETER

14